Sears's Estate

Before Gest, Henderson, Van Dusen, Stearne and Sinkler, JJ.

324

*Raymond M. Remick* and *John Harper*, for exceptants.

*W. Logan MacCoy*, contra.

GEST, J., March 31, 1933.—All of the relevant facts appear very fully in the adjudication, so that we need not repeat them; and as we concur with the auditing judge in his conclusions, both of fact and law, we shall merely advert to a few of the matters discussed at the argument.

The instrument upon which the claim was brought was under seal, and this is frequently, but inaccurately, said to import a consideration for the contract. In reality the covenant under seal is a formal contract and binding on the covenantor irrespective of the doctrine of consideration. The instrument is not evidence of the obligation; it is the obligation itself: Williston on Contracts, 412, Sec. 205, cited by Henderson, J., in Zell's Estate, October Term, 1924, No. 3809, unreported, from which the auditing judge quotes in extenso. This has been the law in Pennsylvania from an early date: Grubb *v.* Willis, 11 S. & R. 107; Candor's Appeal, 27 Pa. 119, the latter case being especially applicable here and frequently cited. See, also, Burkholder's Exec'r *v.* Plank, 69 Pa. 225, and Ross's Appeal, 127 Pa. 4.

Consequently, the execution of this instrument being proved or admitted, it was incumbent on the executors of the obligor to show payment, or, as an equitable defense, fraud or failure of an actual valuable consideration, none of which appears in this case. The burden of proof was distinctly on the executor. Huffman *v.* Huffman, Admin'x, 106 Pa. Superior Ct. 241, was cited, but there the claim was for payments falling due after the death of the obligor, and counsel in his brief frankly conceded that this case was different. It was held in that case that the liability of the obligor did not continue after his death, but in the present case the claim was only for that which accrued during the lifetime of the obligor.

The claimant admitted certain payments on account, and the check stubs of the decedent were also considered as evidence of others, giving to the stubs the fullest force to which they might be entitled: Laning's Estate, 241 Pa. 98; Hanna's Estate, 81 Pa. Superior Ct. 159. Nor did the claimant ask for interest, or for payments after the death of the decedent, so that the executor has no just cause of complaint so far as the amount of the award is concerned.

The exceptants argued that there was a presumption of payment of the sums covenanted to be periodically paid, by analogy with the familiar rule applicable to claims for servants' wages, board, nursing and the like, but the distinction

is clear, even if we make no distinction between a contract by parol and a covenant under seal.

Nor is there any sufficient evidence to show that the parties to the obligation agreed by parol to the reduction of the monthly payments to $50 a month. The general rule is that a contract under seal cannot be varied by a subsequent parol agreement, unless, indeed, the element of estoppel enters into the case: French v. Whitticar, 3 Phila. 51; Gardiner's Estate, 18 Phila. 30. The testimony, however, was entirely too vague to justify any finding that the contract was even intended to be changed, and the provisions in it looking to any future modification simply indicated the possibility of some such adjustment being made in binding form.

It was finally argued that the second husband of the claimant had assumed the status of a father toward his stepchild and, therefore, the estate of the decedent was discharged, and Young v. Hipple, 273 Pa. 439, was cited. This case merely holds that a stepchild, especially since the Act of May 20, 1921, P. L. 916, Sec. 6, has an insurable interest in her stepfather's life, which has nothing to do with the case before us. We fail to see that this could have the slightest effect on the father's formal obligation.

All of the exceptions are dismissed, and the adjudication is confirmed absolutely.