BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION, Appellant, vs. BURHANS and others, Respondents.

*October 7—November 3, 1953.*

For the appellant there were briefs by *Godfrey & Godfrey* of Elkhorn, and oral argument by *Alfred L. Godfrey*.

For the respondents there was a brief by *Kenney, Korf & Pfeil* of Elkhorn, and oral argument by *Francis J. Korf*.

BROWN, J. Respondents submit that the purchase of accounts receivable by the bank as alleged in the complaint did not make the National Cart Corporation debtor to the bank; also that National Cart Corporation's agreement with the bank was a guaranty of the debts of its customers and they contend that appellant is trying now to convert respondents' guaranty of National Cart Corporation's debts into a guaranty of the corporation's guaranty.

In view of the broad language of the guaranty defining the term "indebtedness," the respondents' argument cannot succeed. "Debts, obligations, and liabilities" of the National Cart Corporation, "voluntary or involuntary," "absolute or contingent," are included in respondents' promise to pay.

In referring to the agreement between National Cart Corporation and the appellant bank, the complaint alleges:

"That under the terms of said agreement it expressly provided that in the event said National Cart Corporation shall be adjudicated a bankrupt, said National Cart Corporation will, on demand, pay plaintiff the aggregate principal amount then owing on all unpaid accounts then outstanding."

Here, certainly, is a contingent liability which, as the complaint alleges in the next paragraph, became an absolute one by the adjudication of bankruptcy. When that obligation became fixed by the occurrence of the event provided for, the outstanding accounts became the obligations of the National Cart Corporation due to the latter's unequivocal promise to pay them. They were no longer only the debts of the National Cart Corporation's debtors but were the corporation's own debts. The contingency having occurred, the situation is the same as the one treated in *Drovers' Deposit Nat. Bank v. Tichenor* (1914), 156 Wis. 251, 253, 145 N. W. 777. When Tichenor discounted the notes of Nicholson at the Drovers' Bank he signed an instrument which called itself a guaranty and which recited " 'We do hereby promise and agree to pay said notes at maturity, . . .' " Nicholson did not pay one of the notes and the bank sued Tichenor on it. He demurred to the complaint and submitted that his was an agreement to pay the debt of another and certain requirements of the statute of frauds applicable to agreements to pay the debts of another were lacking. We held that the statute did not apply, even though the instrument was referred to as a guaranty. Tichenor had not agreed to pay the debt of another if that person did not pay but had agreed to pay absolutely, thus making the note his own debt. So here, National Cart Corporation promised to pay the accounts—not if the original debtors failed to pay—but if the National Cart Corporation was adjudicated bankrupt. The event occurred, the obligation matured, and the indebtedness, liability, or obligation became that of the promisor.

The case of *Sharpe v. First Nat. Bank of Antigo* (1936), 220 Wis. 506, 507, 508, 264 N. W. 245, cited by respondents, is easily distinguished. There Johns agreed to pay to the bank " 'all loans, . . . accounts, . . . liabilities . . . now owing, or which may hereafter become due or owing by the Antigo Canning Company, . . .' " to the bank.

Next, Johns borrowed $6,750 from the bank and simultaneously plaintiff executed this: " '. . . (I) do hereby agree to pay . . . to The First National Bank . . . all loans, . . . notes, . . . liabilities of every kind and description now owing, or which may hereafter become due or owing by R. B. Johns . . . to said bank.' " Plaintiff did pay this note to the bank but in so doing he borrowed $6,000 from the bank upon his own collateral note. The collateral agreement stated that the collateral was pledged not only for the payment of the $6,000 note but " '. . . for the further security and payment of any and all indebtedness which the undersigned [plaintiff] may now or hereafter be owing to the said . . . bank. . . .' " About three years later the bank told plaintiff he had guaranteed the obligations of the canning company. Plaintiff offered to pay his note and take back the collateral. The bank refused to accept payment or release the collateral. Later the collateral was released but its value had gone down and plaintiff sues for such difference in value. The case turns on whether plaintiff had become a guarantor of the debts of the canning company. This was not an action by the bank against Johns for his agreement to pay the liabilities of the canning company. Neither was it an effort to enforce any payment by the plaintiff on account of the debts of Antigo Canning Company. It does not appear that there were any such debts. The case does not say that Sharpe is *not* liable as Johns' guarantor if Johns, as a guarantor of the canning company should become liable. The opinion is restricted to Sharpe's liability under his collateral note which pledged the security for his own "indebtedness." The court said that the term "indebtedness" was the equivalent of "debt" and a contingent liability is not a debt. The case recognizes, page 510, that at some time a claim might be made against Sharpe for the canning company's liabilities because of the guaranty he had given in the Johns matter; but it held that when Sharpe

tendered payment of his note he was entitled to receive his collateral and under the terms of his agreement the bank could not hold the security for Sharpe's "debt" to be security for a contingent liability which had not become a debt when payment was offered. In the instant case, respondents did not limit their undertaking to the National Cart Corporation's debts as the term is used in the *Sharpe Case, supra.* They expressly included a promise to pay the contingent liabilities of National Cart Corporation. The contingent liabilities have become absolute and respondents' obligation has matured and is enforceable.

Respondents also rely on *National Bank of Commerce v. Rockefeller* (8th Cir. 1909), 174 Fed. 22. The facts in that case also were very different from the ones now before us. The bank was not suing Rockefeller on his guaranty. On the contrary, Rockefeller had paid his guaranty and brought the action to force the bank to release to him certain collateral posted by the primary debtor to secure the primary debt. The trial court decreed the release but on appeal this part of the judgment was reversed because the collateral also secured debts incurred before Rockefeller executed his guaranty and not guaranteed by him. It was held that the bank was entitled to keep the collateral until such debts were paid. Respondents refer us to that part of the opinion which states that a guaranty of debts does not render the signer liable on the debtor's guaranty of collateral notes. We quote from respondents' brief: "The court said that the guaranty did not constitute debts of the corporation but were merely executory contracts on which its liability was contingent and as such were beyond the scope of the guaranty."

We think the federal court was right. Rockefeller's guaranty was for nothing but the debts of the company. The collateral notes were not in default, and had not become the debts of the company. The company's liability at the time of

the suit was contingent only and of course was not included in a guaranty confined to company' debts. But in our own case not only had the contingency occurred which matured the National Cart Corporation's obligation and transformed what had been the debt of another into its own debt, but the respondents had expressly guaranteed the contingent obligations and liabilities of the National Cart Corporation. The reasoning and result in the *Rockefeller Case, supra,* does not conflict with a decision that the guaranty of respondents is broad enough to cover the debts assumed by the National Cart Corporation as such matters are pleaded. We conclude that the complaint states facts sufficient to constitute a cause of action.

*By the Court.*—Order reversed and cause remanded for further proceedings not conflicting with the opinion.